UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TODD SAMELMAN                      )
1200 North Nash Street, #1104      )
Arlington, VA 22209                )
                                   )
          Plaintiff,               )
                                   )
     v.                            ) Civil Action No.
                                   )
PERKINS COIE LLP                   )
700 13th Street, NW #600           )
Washington, DC 20005               )
                                   )
          Defendant.               )
_____)

**COMPLAINT TO REMEDY DISCRIMINATION AND RETALIATION IN EMPLOYMENT**

**Introduction**

1. Perkins Coie has a problem with anti-Jewish animus, as two Perkins Coie partners admitted to plaintiff. During his employment, Perkins Coie penalized plaintiff for being an observant Jew. For example, partner David Jones rescheduled a meeting so that it fell on Yom Kippur, a Jewish High Holiday observed by plaintiff. Although plaintiff informed Jones of the conflict and his unavailability, Jones did not reschedule the meeting. Instead, Jones announced at the meeting that two large, important projects which had previously been assigned to plaintiff would be reassigned to others who were not observing the holiday. Partner David Harth likewise scheduled important events on Jewish holidays, and then penalized plaintiff for not attending. Similar situations recurred throughout plaintiff's employment with Perkins Coie. Firm partners David Harth and David Jones were influential in plaintiff's practice group. Harth and Jones had the ability to control work assignments directly on their matters, as well as to influence other

partners in the amount and quality of work assignments given to associates in their practice group, including plaintiff. Plaintiff's assigned associate reviewer told him that he could not succeed at the firm if David Harth did not support him, and that he might as well leave the firm if he got on the wrong side of Harth. After plaintiff explained that he was an observant Jew who needed to be off work on the Jewish holidays, Harth and Jones changed the way they worked with and interacted with plaintiff. They provided unwarranted, exaggerated or false negative feedback to Samelman's evaluation, and reduced his work assignments. Their actions influenced plaintiff's standing in his department and the perceptions of others.

The firm terminated plaintiff, claiming it lacked sufficient work for him. This was not true, as there was sufficient work available. In addition, the firm continued to advertise and recruit for additional associate attorney's in plaintiff's area throughout the time it claims to have had insufficient work for plaintiff.

## Venue and Jurisdiction

2.   This is an action to remedy defendant's conduct in terminating plaintiff because of his religion and because he opposed discrimination, in violation of 42 U.S.C. § 1981 and/or Title VII of the 1964 Civil Rights Act, as amended, as well as under District of Columbia law including the DC Human Rights Act, D.C. Code § 2-1401 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f). Venue is proper in this District under 28 U.S.C. § 1391(b).

3.   Plaintiff was notified of his termination on September 29, 2014. Plaintiff filed a complaint with the EEOC on July 21, 2015. Plaintiff's EEO Charge was filed with the EEOC within 300 days of September 29, 2014. The EEOC issued a "notice of right to sue" letter that was dated September 27, 2016. Plaintiff timely exhausted administrative remedies under Title

VII. To explore settlement, the parties entered into a tolling agreement to toll the deadlines for filing suit. All deadlines were tolled from December 1, 2016 through March 10, 2017 (including the first and last days). Accordingly, this suit is timely.

### Parties

4. Plaintiff Todd Samelman (Samelman) is a Jewish citizen of the United States. During the relevant times he was employed by Defendant Perkins Coie in its District of Columbia Office. Samelman was a 2003 law school graduate. Samelman was hired as a "lateral" associate in mid-2009. Samelman was an "employee" of Perkins Coie as that term is defined in the relevant statutes. Samelman was employed by Perkins Coie in the District of Columbia. All allegations are made on information and belief.

5. Defendant Perkins Coie (Perkins Coie) is a law firm providing services throughout the United States, including in the District of Columbia. Among other things, Perkins Coie represents clients in the field of patents and intellectual property law, including litigation related to this area of law. During the relevant times, Perkins Coie maintained an office in Washington, DC. Perkins Coie is an "employer" as that term is defined in the relevant statutes. Perkins Coie employed Plaintiff Todd Samelman in its District of Columbia office during the relevant times. During the relevant time, Plaintiff Todd Samelman worked as an intellectual property (IP) attorney in the patent group for defendant Perkins Coie. During the relevant time, defendant Perkins Coie employed more than 500 people. During the relevant time, Perkins Coie conducted business in this judicial district. Defendant Perkins Coie LLP can sue or be sued in this judicial district. This Court has personal jurisdiction over Defendant Perkins Coie. This Court has subject matter jurisdiction over the facts alleged herein.

## Factual Background

6.  Perkins Coie is a large national law firm. As large law firms go, it is not very diverse. A partner named Michael Oblon, who identifies as Jewish, acknowledged to plaintiff that he knew of ongoing issues regarding anti-Jewish feelings at Perkins Coie. Plaintiff's conversation with Mr. Oblon occurred on or about January 15, 2015, when they both attended an American Inn of Court meeting at the Federal Circuit courthouse.

7.  Nancy Williams is a partner at Perkins Coie. During the relevant time, she was designated as the Personnel Partner. Ms. Williams wrote in a letter that the firm provided access to a calendar of Jewish Holidays to assist its lawyers to avoid scheduling conflicts with Jewish holidays. Ms. Williams wrote:

> The Firm has taken steps to avoid scheduling major events and meetings on religious holidays. Our meeting planners refer to a Calendar of Major Jewish Holidays available through the United Synagogue of Conservative Judaism in order to avoid conflicts with the religious observances of Jewish lawyers.

8.  Because the firm asks its partners to avoid conflicts with Jewish holidays, it is fair to conclude that the multiple scheduling conflicts that plaintiff experienced were neither accidental nor unavoidable. Plaintiff experienced pressure to attend work related events on Jewish Holidays. When plaintiff was unable to attend work related events because of a conflict with Jewish Holidays, plaintiff suffered negative consequences. Frequently, plaintiff suffered loss of work or other penalty if religious observance prevented his attendance at a work related event. Some examples follow.

9.  David Jones, Perkins Coie partner and first chair of a case rescheduled the pre-trial meeting to occur on Yom Kippur in 2009. Samelman had to decline the meeting invitation because of the conflict with a religious observance and he explained the situation. Samelman emailed Colin Sandercock, a Perkins Coie partner in the D.C. office stating the same.

4

Sandercock was plaintiff's supervisor. The meeting proceeded without plaintiff. Plaintiff lost two projects to other attorneys at the meeting. Jones later criticized Samelman in year-end evaluations for not having sufficient experience on tasks such as the two that Jones removed from him. Plaintiff would have been able to complete work on these projects despite having missed the meeting. Accordingly, the removal of these projects appeared to be punitive in nature.

10. The firm scheduled a visit by the firm's managing partner, Bob Giles, in conflict with the Jewish High Holiday of Rosh Hashanah in 2010. Giles met with the associates in a non-formal social atmosphere. This function was a time where associates had the opportunity to interact with the head of the firm, to network and to forge a better relationship with him. Samelman lost the opportunity to interact with Mr. Giles and the other people in attendance. Giles did not work in the DC office and opportunities for associates in the DC office to interact directly with Giles were infrequent.

11. David Harth, partner and first chair of a big case scheduled a meeting with potential technical experts on Rosh Hashanah 2011. Samelman is a Ph.D. biologist and this case was directly in his area of expertise. The meeting with the potential experts was also within plaintiff's area of expertise. Samelman asked for the meeting to be rescheduled because of the conflict with a Jewish High Holiday. Harth refused to reschedule the meeting with the potential experts. Instead of Samelman, Harth took a first year associate with no technical background to the meeting. Harth chose to reassign assignments over the course of that case to this same associate who lacked Samelman's technical background. The diversion of work from Samelman to this first year associate was retaliatory. Samelman's background made him a particularly good fit to work on this case. Harth's decision to reduce the amount of work assigned to Samelman on

this case made it more difficult for him to meet billable hour targets. It also reduced the amount of litigation experience that Samelman had on a case that was squarely within his area of expertise.

12. There was a deposition scheduled to be taken in Boston, MA during the Jewish holiday of Passover in 2012. Passover is an eight day holiday. Observant Jews do not work on the first two days or last two days of the holiday. In addition, there are significant dietary restrictions during Passover, where observant Jews eat special foods and do other things to observe the holiday. It would be difficult while traveling as the associate working to meet a partner's schedule and to meet the partner's work needs for plaintiff to observe Passover in the manner he wanted. Samelman sent multiple emails to multiple partners noting the difficulty that he would have attending the deposition during Passover. Samelman discussed the issue with Terry Wikberg, Perkins Coie partner and his Washington, DC office mentor. Wikberg stated in no uncertain terms that Samelman had to attend the deposition because of his ongoing issues with the partners in the Madison, Wisconsin office, especially Jones and Harth. Samelman traveled to Boston during Passover, interfering with his Passover observance.

13. The Commercial Litigation Practice Group Retreat in Denver, Colorado was scheduled to coincide with the beginning of the Jewish High Holiday of Rosh Hashanah in 2012. The retreat ended Sunday afternoon with Rosh Hashanah starting Sunday at sundown. Multiple partners stated that Samelman could go for part of the Retreat and leave early to observe the holiday. By leaving the retreat early, plaintiff would have had to forgo the networking, camaraderie and goodwill generated by these events. The fact that the firm schedules and finances these retreats shows that the firm believes there is value to the lawyers having "face time" with each other. In addition, these retreats often present opportunities for associates to

introduce themselves to partners in other offices that might have found his technical or legal skills useful. Samelman moved to the firm as a lateral hire in mid-2009 with his practice group. For this reason, many partners were unaware of Samelman's particular skills and knowledge. Samelman never found out if others needed his expertise because of the scheduling difficulties. To be confident of being home in time for the High Holiday he would have had to miss a substantial part of the meeting, including the most valuable networking time. Travel to the D.C. area from Denver was difficult at that time, and plaintiff was unwilling to cut his travel too close and risk not being home in time to observe the holiday.

14. The firm scheduled a pro bono training session in conflict with Rosh Hashanah 2012. Plaintiff was not able to attend. This training was directly relevant to Samelman's pro bono activity. In addition, pro bono training often has benefits in developing legal skills beyond the particular pro bono representation, and plaintiff missed out on those benefits as well.

15. There was a practice group meeting scheduled in D.C. in conflict with the Jewish High Holiday of Yom Kippur 2012. This was the first and only meeting with Konnie Love, Perkins Coie Director of Practice Groups (located in the Boise, Idaho office) and Nate Koppelman, Perkins Coie Patent Paralegal Manager (located in the Seattle, Washington office) to discuss patent group issues. Meeting face to face with these senior people would have provided valuable benefits, both tangible and intangible. Samelman was unable to attend this meeting. Samelman explained the conflict to David Laub who was the second in charge of the firmwide patent group. No change was made in the meeting schedule. No follow up was provided from either Love or Koppleman or anyone else at Perkins Coie. Samelman was effectively excluded from another Perkins Coie intellectual property event. Samelman tried to find out what happened during the meeting but heard only generalities. No one at Perkins Coie

offered plaintiff any summary, minutes, handouts, Powerpoint deck or any other information regarding the substance of the meeting he missed.

16. A Washington, DC Office Associate luncheon was scheduled to conflict with the Jewish High Holiday of Rosh Hashanah in 2013. As with other firm events and meetings, it is difficult to quantify the lost opportunities for face time with colleagues and more senior lawyers. The event was scheduled months in advance. Plaintiff pointed out, months before the luncheon, that it conflicted with a Jewish High Holiday. All or most of the attendees were local, so it should have been an easy matter to reschedule for another day. Surprisingly, the firm did not reschedule. Plaintiff's multiple efforts to get this and other events rescheduled led to him being viewed as a complainer.

17. Perkins scheduled a Patent Group presentation to coincide with the Jewish Holiday of Passover in 2014. Samelman was unable to participate. As with the other events, no one from Perkins Coie attempted to provide Samelman with minutes, notes or a summary of what he had missed. At some point, Samelman started to schedule vacation during Passover in an effort to reduce the work conflicts with his observance of the holiday.

18. There was a conflict during the Jewish High Holiday of Rosh Hashanah in 2014. Samelman was out of the office observing Rosh Hashanah in 2014. As a result of his religious observance, he did not reply to a partner's communication regarding non-urgent task opportunities. On or about Thursday September 25, 2014, Viola Kung, a Perkins Coie partner in the Los Angeles office, emailed Samelman asking for assistance on a project. The timeline was not urgent. Ms. Kung should have received an automatic email response stating that Samelman was out for the Jewish holiday and would return on Monday. When Samelman responded to Viola Kung on Monday, she said she had already assigned the work to a different associate.

19. Perkins Coie partners Jones and Harth had a problem with Samelman's religious observances. David Jones retaliated against Samelman for missing a meeting that Jones had scheduled to conflict with Yom Kippur in 2009. Jones continued to penalize plaintiff in future work assignments. Jones also used his position as a member of the Associate Evaluation Committee to penalize plaintiff by providing negative information in associate reviews in 2010 and 2011. Jones' input to plaintiff's evaluations was not only intimidating, but also led to loss of bonuses and raises.

20. David Harth scheduled an important meeting with a potential technical experts on Rosh Hashanah in 2011, and Harth retaliated against Samelman by reassigning his work to a junior associate who lacked Samelman's technical training and expertise. Harth continued to penalize Samelman thereafter for being an observant Jew.

21. David Jones and David Harth were important partners in plaintiff's practice group. Together, the two partners had direct control over many potential assignments. They controlled cases and assignments within plaintiff's technical areas. Jones and Harth also had the ability to influence the perception of other partners in plaintiff's practice area, thereby affecting the amount and quality of cases and projects assigned to plaintiff. Jones and Harth both directly and indirectly discriminated and retaliated against plaintiff.

22. The firm criticized Samelman for allegedly not getting enough work assignments and not billing enough hours. As described above, but for Perkins Coie's refusal to accommodate and retaliatory conduct, he would have had more assignments, more billable hours, and more opportunities to network with other lawyers to expand his range of work assignments. David Harth virtually stopped assigning new work to plaintiff because of his being an observant Jew.

23. In or about August 2012, Perkins Coie conducted an EEO training which addressed legal issues concerning discrimination and retaliation. In connection with that training, Perkins Coie informed Samelman that firm partner Selena Linde was the DC Office Diversity Partner. As of August 2012, Selena Linde was an appropriate person to receive complaints regarding unlawful discrimination or retaliation. Samelman met with Selena Linde after the EEO training. Samelman told Selena Linde that he believed the firm had discriminated against him because of his religion, and provided some examples. Samelman asked Linde to have his complaints investigated. Linde appeared not to know that the firm had designated her as a contact person for EEO concerns. Linde responded to Samelman's complaint with hostility and ridicule. Linde told him that everything was his fault and that he was in the wrong in every example he provided. Linde did not say or do anything to indicate that the firm would investigate or otherwise respond to Samelman's concern about discrimination. Linde did not report back to Samelman relating to his EEO complaint.

24. After speaking with Selena Linde, Samelman contacted Darrin Emerick. In 2012, Darrin Emerick was the firm's Chief Personnel Officer (CPO). In 2012, Emerick was an appropriate person to receive EEO concerns from firm employees such as Samelman. Samelman told Emerick about his concerns regarding discrimination and retaliation. Samelman also told Emerick about Linde's reaction to his EEO complaint. Emerick did not offer to investigate the concerns. Emerick's only proposed response to plaintiff's complaints was to take further steps to ensure that schedulers had access to calendars showing Jewish holidays.

25. As part of the 2012 associate evaluation process, Samelman submitted a self-evaluation. Samelman complained in writing about his concerns regarding discrimination and retaliation. After making this protected complaint of discrimination, Samelman did not get a

raise, bonus or promotion to Counsel. After making this protected disclosure, the firm continued to discriminate and retaliate against plaintiff in the assignment of work as well as other benefits of employment.

26. The firm made exaggerated, false or misleading statements in Samelman's year-end evaluations, including in 2010, 2011 and 2012. Some of this information came from David Jones, which affected plaintiff's bonuses and raises. Jones apparently went out of his way to have his falsely disparaging comments in the 2011 annual review because he was not listed as a reviewer. It appears that Jones used his position on the reviewing committee to negatively influence plaintiff's evaluation. The 2010 evaluation was deemed so inaccurate that the firm agreed to rewrite it. In fact, however, the firm did not follow through on this promise.

27. In 2012, David Harth provided false information about Samelman's work product in connection with Samelman's year end evaluation. Harth's information wrongly portrayed Samelman in a negative light. For example, Harth invented work projects that did not exist or were not assigned to plaintiff, and then criticized plaintiff's performance on them. The evaluation also faulted Samelman for not receiving work assignments. This criticism was exaggerated. Samelman had lost or not received a number of assignments in his area of expertise because of the discrimination described above, as well as retaliation by Jones and Harth and perhaps others. Plaintiff's repeated requests to schedule around his religious observances and conflicts with partners such as Jones and Harth adversely affected his ability to secure new projects and work assignments. D.C. Partner John Isacson agreed with Samelman that Harth's comments in the 2012 evaluation were false. Thomas Johnson, Samelman's 2012 AEC reviewer and a Perkins Coie partner, told Samelman that he would investigate the falsehoods in his evaluation. Mr. Johnson did not report back to Samelman regarding his investigation.

28. In late 2012, Samelman requested funding for litigation skills training. On or about January 4, 2013, firm partner Paul Parker, denied the request. At the time, Parker was head of the firm-wide Patent Group. The firm provided similar litigation skills training to other associates who were not observant Jews and who had not complained about discrimination.

29. In 2013, Samelman asked Mr. Emerick to look into why a DC Office Associate luncheon was scheduled on Rosh Hashanah. Samelman reminded Mr. Emerick of his (Emerick's) previous commitment to ensure that schedulers knew to avoid conflicts with Jewish holidays. Emerick declined to look into the scheduling of the luncheon.

30. After Samelman missed the luncheon on Rosh Hashanah in 2013, he asked Emerick to take some action. Emerick said the issue would be discussed, but not change was made in the meeting date. Emerick told Samelman that, if he was not satisfied with Emerick's response regarding discrimination, that he should contact Nancy Williams, the firm's Personnel Partner.

31. Samelman contacted Nancy Williams. Samelman described the discrimination and retaliation that he had experienced at the firm. Williams responded with a letter stating that the firm partners had access to calendars showing Jewish holidays. Williams also told Samelman that he need not attend any events scheduled in conflict with Jewish holidays. Williams did not take action to remedy the discrimination or retaliation that Samelman had experienced. Williams took no action to ensure that Samelman's assignments and billable hours would not be adversely affected by discrimination and retaliation.

32. In his 2013 self-evaluation, Samelman described the discrimination and retaliation he had experienced. Samelman also explained the inaccuracies in his previous year's evaluation. Samelman met with LeAnn Johnson Koch, a Perkins Coie partner. LeAnn Johnson Koch was

Samelman's 2013 AEC reviewer. Samelman met with her and explained his concerns about the scheduling of work related events on Jewish holidays and being penalized for his observance of those holidays. Ms. Koch responded by telling Samelman that, if he had a problem with firm partner David Harth that he (Samelman), should leave the firm. Ms. Koch indicated that Harth was an influential partner in the firm and that Samelman could not succeed at Perkins Coie if Harth did not want him to be successful. Ms. Koch did not offer any proposals for remedying the discrimination and retaliation. No one at the firm responded to plaintiff's description of discrimination and retaliation in his 2013 self evaluation.

33. In the fall of 2014, Samelman submitted another self-evaluation. In that document, Samelman complained about the discrimination and retaliation he had experienced at the firm. Samelman had been scheduled for a preliminary interview as part of his 2014 year end evaluation. The firm canceled Samelman's preliminary interview approximately two weeks prior to its scheduled date. The firm canceled Samelman's preliminary interview after receiving his written complaint regarding discrimination and retaliation. Samelman appeared for his interview at the originally scheduled date and time. His originally scheduled interview was with Jodi Feuerhelm, a Perkins Coie partner. Ms. Feuerhelm was Samelman's AEC reviewer for 2014. Ms. Feuerhelm met with Samelman later on the same day of Samelman's original, but now canceled, interview. This meeting was on or about Tuesday, September 23, 2014.

34. During his meeting with Jodi Feuerhelm in September 2014, Samelman explained the history of discrimination and retaliation he had experienced dating back to 2009 with David Jones. Samelman also described his efforts to address the problems by seeking help from Darrin Emerick, Selena Linde and Nancy Williams. Ms. Feuerhelm told Samelman that she would investigate his concerns about discrimination and retaliation.

35. On or about Wednesday, September 24, 2014, Samelman's complaint to Feuerhelm was acknowledged by Perkins Coie via an email sent from Nancy Williams. Samelman left work early on Wednesday, and was off work on Thursday and Friday after his meeting with Ms. Feuerhelm in observance of the Jewish High Holiday of Rosh Hashanah.

36. Monday, September 29 was Samelman's next full day back in the office after meeting with Jodi Feuerhelm on Tuesday, September 23. In that Tuesday meeting, Samelman had complained to Feuerhelm about discrimination and retaliation. On his next full day at work, Samelman was fired. John Isacson, a partner in the DC office, told Samelman on Monday that there had been meetings all morning about terminating his employment, and that as a result of those meetings, Paul Parker was going to call and terminate him that day (September 29). Isacson asked Samelman to take Parker's call in his (Isacson's) office. Samelman told Parker on the call that he had a pending discrimination complaint with the firm. Parker did not discuss Samelman's pending complaint. The termination letter had not been drafted at the time of the call. Parker told Samelman on the call on Monday September 29 that he (Parker) would draft a termination letter and get it out soon. The termination letter was dated September 30, 2014.

37. Samelman had a long meeting on September 30, 2014, with Isacson and Laub about his termination. Samelman told them that he believed this was based on discrimination and retaliation. Samelman wanted to complain about his termination, but the others told him that the decision was irrevocable and he would be wasting his time. Laub told Samelman that the deadline in the letter of December 31, 2014 was not a hard date and could be extended if the firm had a reason to do so.

38. Other lawyers who identify as Jewish felt pressure to work on Jewish holidays. One of these was a peer of plaintiff's, and is now a partner. When she was an associate, she

complained to him about being pressured to work on Jewish holidays. Plaintiff learned that other attorneys who identified as Jewish often attended work related events on Jewish holidays.

39. Defendant Perkins Coie took various tangible and intangible actions that adversely affected plaintiff's employment. This includes but is not limited to firing plaintiff on September 29, 2014, scheduling work related meetings and events on Jewish holidays, penalizing plaintiff for being an observant Jew, removing or reducing work assignments, denying bonuses, raises and promotions, and/or creating a hostile work environment. The events contributing to and constitute the hostile work environment continued through the date of plaintiff's termination.

40. The actions of defendant Perkins Coie were intentional, malicious, willful, wanton and in reckless disregard of the rights of plaintiff Samelman.

## COUNT I
## DISCRIMINATION

41. The actions of defendant Perkins Coie described herein, including but not limited to firing plaintiff Samelman, failing to accommodate plaintiff Samelman, pressuring him to reduce or avoid his religious observance, and/or creating a hostile work environment, were taken wholly or partially because of Samelman is an observant Jew.

## COUNT II
## RETALIATION

42. The actions of defendant Perkins Coie described herein, including but not limited to firing plaintiff Samelman and/or creating a hostile work environment, were taken wholly or partially because he opposed discrimination and/or sought to observe his religion. Plaintiff's actions in complaining about discrimination and/or retaliation were protected by law from retaliation.

**RELIEF**

Plaintiff asks the Court to grant the following relief:

1. Declare that defendant's action in firing plaintiff violated plaintiff's rights under 42 U.S.C. § 1981, Title VII and/or the DCHRA;

2. Award plaintiff compensatory damages for the monetary loss he suffered as a result of defendant's firing, including loss of pay and benefits, and for the non-monetary loss, including pain and suffering, emotional distress, anxiety, humiliation, loss of enjoyment of life, and other injuries defendant's actions have caused, in an amount to be proven at trial;

3. Award plaintiff punitive damages, in an amount to be proven at trial;

4. Order defendant to pay plaintiff's costs, including reasonable attorneys' fees and any other costs allowed by law;

5. Award prejudgment interest as allowed by law;

6. Order such other and additional relief as the Court deems just and equitable.

**Jury Demand**

Plaintiff requests trial by jury.

_____
Stephen Z. Chertkof (DC 451713)
HELLER, HURON
CHERTKOF & SALZMAN
1730 M Street, NW, Suite 412
Washington, DC  20036
(202) 293-8090

Counsel for plaintiff